UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MAXRELIEF USA, INC.,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| *Plaintiff*, | ) | |
| | ) | **5:22-cv-00270-LCB** |
| v. | ) | |
| | ) | |
| **FULFYLD, LLC,** | ) | |
| | ) | |
| *Defendant*. | ) | |

## PLAINTIFF MAXRELIEF USA, INC.'S REPLY IN SUPPORT OF ITS PARTIAL MOTION FOR SUMMARY JUDGMENT

Plaintiff MaxRelief USA, Inc. ("MaxRelief") hereby files its reply in support of it Motion for Partial Summary Judgment and states as follows:

## INTRODUCTION

There is no dispute of fact concerning the material facts underlying MaxRelief's conversion claim and summary judgment motion. The evidence is undisputed that (a) certain MaxRelief inventory was recorded in Fulfyld's warehouse management system as being at Fulfyld's warehouse, but that (b) that inventory was nowhere to be found when an independent audit company went to Fulfyld's warehouse to count the inventory. Specifically, 130 inventory line items were missing.

Fulfyld served as a retailer and order processing/fulfillment agent to MaxRelief. When Fulfyld took possession of inventory shipped to Fulfyld by

51951196 v1

MaxRelief, Fulfyld was responsible to ensuring that the inventory was stored, maintained, and shipped out in accordance with customer orders. Consequently, Fulfyld is liable to MaxRelief for damages resulting from any missing inventory. And, absent an showing for why over $100,000 worth of inventory is unaccounted for at Fufyld's warehouse, MaxRelief is entitled to judgment as a matter of law on its claim for conversion against Fulfyld.

Fulfyld's response attempts to reframe the issue in this case and misapprehends the evidence supporting MaxRelief's claims. Regardless of how Fulfyld frames the issue, however, three insurmountable facts remain: (1) an independent auditor manually counted every piece of inventory associated with MaxRelief at Fulfyld's warehouse from March 16, 2022, through March 18, 2022; (2) the inventory listing showing what inventory Fulfyld should have had at its warehouse from March 16, 2022, through March 18, 2022, was generated by Fulfyld's own warehouse management system, ShipEdge; and (3) the inventory manually counted from March 16, 2022, through March 18, 2022, does not match the inventory listing generated by Fulfyld's own warehouse management system.

Based on these facts alone, MaxRelief is entitled to judgment as a matter of law for its conversion claim against Fulfyld. Discovery has closed, and Fulfyld has failed to come forward with substantial evidence showing that there is a genuine issue of material fact for trial as to MaxRelief's claim for conversion. Thus,

MaxRelief requests that the Court grant MaxRelief's motion for partial summary judgment as to liability on MaxRelief's conversion claim.

## ARGUMENT

**A.  MaxRelief is entitled to judgment as a matter of law on its claim for conversion.**

An action for conversion will lie if there has been a wrongful exercise of dominion over property in exclusion or defiance of the plaintiff's rights and the plaintiff has an immediate right to possession of the property. *United Merchants & Manufacturers, Inc. v. Sanders*, 508 So. 2d 689, 691 (Ala. 1987). The conversion may consist, not only in an appropriation of the property to one's own use, but in its destruction, or in exercising dominion over it to the exclusion or defiance of plaintiff's right. *Russell-Vaughn Ford, Inc. v. Rouse*, 206 So. 2d 371, 373 (Ala. 1968).

Here, Fulfyld could not account for certain inventory of MaxRelief goods to which MaxRelief had an immediate right to possession. (*See* Declaration of Peter Spoto, Doc. 2-1, ¶¶ 12-13.) Moreover, MaxRelief demanded that Fulfyld return MaxRelief's goods to MaxRelief or account for the missing stock. (*See* Complaint generally, Doc. 1.) Fulfyld neither returned the MaxRelief goods to MaxRelief nor accounted for the missing MaxRelief stock. (*Id*.) Accordingly, an action for conversion lies here.

Fulfyld argues that MaxRelief's conversion claim fails because MaxRelief removed all remaining inventory from Fulfyd's warehouse in March 2022. This argument fails for two reasons. First, MaxRelief's conversion claim is that Fulfyld wrongfully converted *some of* MaxRelief goods stored at Fulfyld's warehouse - not all MaxRelief goods stored at Fulfyld's warehouse. (*See* Complaint, Doc 1 and Spoto Declaration, Doc. 2-1.) MaxRelief should not be punished for mitigating its damages.

Second, the fact that a plaintiff recovered allegedly some or all converted property prior to filing suit does not affect the plaintiff's right to seek damages for conversion. *See Roebuck Auto Sales, Inc. v. Wallace*, 301 So. 2d 546, 549 (Ala. 1974) (The tort of conversion is complete when the chattel is converted. A recovery of the property does not amount to a waiver of any right of recovery for conversion even when the property is surrendered voluntarily.)

Based on the discovery conducted and the evidence in the record before the Court, the evidence shows that MaxRelief is entitled to judgment as a matter of law on its claim for conversion.

**B.     There is no genuine issue as to any material fact.**

    **1.     Fulfyld cannot account for certain missing MaxRelief stock.**

DSB-Rock Island conducted an independent audit of the inventory of MaxRelief goods documented in Fulfyld's warehouse management system,

ShipEdge, and the inventory of MaxRelief goods physically present in Fulfyld's warehouse between March 16, 2022, and March 18, 2022. (*See* Doc. 4-2.) After manually counting the MaxRelief goods at Fulfyld's warehouse and comparing the quantity of goods counted with the quantities of goods listed in Fulfyld's warehouse management system, DSB identified 130 line items where the quantity on hand at the Fulfyld warehouse location was less than the quantity listed in Fulfyld's warehouse management system. (*See id.*)

Fulfyld argues that because MaxRelief gave DSB the list of inventory it expected Fulfyld to have on hand at the warehouse, the DSB report is not an "audit of lost or missing inventory." This point rings hollow, however, when one examines the list of inventory MaxRelief gave DSB. The inventory list provided by MaxRelief to DSB is the list generated from Fulfyld's own warehouse management system, Ship-Edge. Moreover, that the inventory list was generated from ShipEdge is confirmed by the url at the bottom of the inventory list and through deposition testimony by Fulfyld's Director of Account Management.

Fulfyld's sole basis for casting doubt on the probative value of the DSB Report is that MaxRelief provided the inventory list to DSB. The inventory list, however, was generated by Fulfyld's own warehouse management system. Further, Fulfyld does not dispute the accuracy of the quantities of goods that DSB manually and independently counted at Fulfyld's warehouse between March 16, 2022, and

March 18, 2022. Thus, Fulfyld's contention that the probative value of the DSB report "with respect to identifying and quantifying the inventory discrepancies" lacks sufficient probative value to establish that MaxRelief inventory was lost fails.

### 2. The fact that Fulfyld disputes MaxRelief's claim of lost inventory is not evidence creating a material dispute of fact.

In its response, Fulfyld reiterates that it disputes whether MaxRelief inventory was lost by Fulfyld. In support of its position, Fulfyld draws the Court's attention to an investigation conducted by Fulfyld employees into missing inventory in 2021/2022 and testimony by Fulfyld employees that cast doubt on whether MaxRelief inventory was lost. Fulfyld's internal investigation and the Fulfyld employee testimony referenced in Fulfyld's response, however, are not evidence creating a material dispute of fact regarding MaxRelief's conversion claim.

The investigation referenced in Fulfyld's response was conducted based on a different data set than the data set reviewed by DSB one month later. As acknowledged by Kelsey Huber, the Director of Account Management at Fulfyld, in email communications with Peter Spoto regarding Fulfyld's investigation, her team "investigated the wrong data set." (Doc. 50-1, p. 40 of 179, Huber Dep., pp. 150:5-22). Thus, Fulfyld's findings 30 days prior to DSB conducting an independent audit of the MaxRelief goods at Fulfyld's warehouse is irrelevant and does not create a material dispute of fact as to the lost inventory identified by the DSB Report.

Similarly, the deposition testimony cited in Fulfyld's response does not create a material dispute of fact as to the lost inventory identified by the DSB Report. There is no evidence showing that any preprinted labels were prepared for any of the lost inventory identified by the DSB Report. Though various Fulfyld employees testified that MaxRelief's owner, Peter Spoto, requested Fulfyld create pre-printed labels and opined that the pre-printing label process could cause inventory discrepancies, not one Fulfyld employee testified that a pre-printed label was created for any of the lost inventory items. To the contrary, Kelsey Huber testified that she never engaged in creating pre-printed labels for MaxRelief goods and that when she investigated whether Fulfyld had any documents showing whether pre-printed labels were prepared for the lost inventory at issue, she could not find "anything that would be of any help to Fulfyld or to MaxRelief." (Doc. 50-1, 11 of 179, Huber Dep., pp. 36:6-37:5)

No evidence was exchanged during discovery showing that any pre-printed labels were prepared for the lost inventory. That no evidence supports Fulfyld's pre-printed labels theory is underscored by the fact that Fulfyld now seeks leave to conduct additional discovery regarding this issue. In the absence of actual evidence, Fulfyld's unsupported theories do not amount to substantial evidence of a material dispute of fact.

MaxRelief sent goods to Fulfyld's warehouse that, pursuant to the agreement between MaxRelief and Fulfyld, Fulfyld had an obligation to store. (*See* Doc. 2-1.) Under the parties' agreement, Fulfyld could only distribute goods in accordance with the orders placed by MaxRelief customers; however, after warehousing MaxRelief goods at Fulfyld's warehouse, Fulfyld could not account for certain inventory of MaxRelief goods that were never distributed to customers. (*See* Doc. 42-2.) As a matter of law, these undisputed facts constitute a conversion. Fulfyld has not shown that there is a genuine issue of material fact as to the missing MaxRelief inventory. The Court, therefore, should grant MaxRelief's motion for summary judgment on MaxRelief's claim for conversion.

## CONCLUSION

WHEREFORE, MaxRelief respectfully requests entry of a judgment in its favor on its conversion claim and an order setting this case for a hearing on MaxRelief's damages.

Respectfully submitted on October 20, 2023.

        */s/ Elena L. Bauer*
Benjamin B. Coulter
Denzel E. Okinedo
Elena L. Bauer
*Attorneys for Plaintiff*

BURR & FORMAN LLP
420 20th Street N, Suite 3400
Birmingham, AL 35203
Tel: (205) 251-3000
Fax: (205) 458-5400
bcoulter@burr.com
dokinedo@burr.com
ebauer@burr.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document on the following by Notice of Electronic Filing on this the 20th day of October, 2023:

Charles A. Ray, IV, Esq.
200 Westside Square, Ste. 50
P.O. Box 13545
Huntsville, Alabama 35801
(256) 346-1900
cray@charlesraypc.com

*/s/ Elena L. Bauer*
Elena L. Bauer