UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MAXRELIEF USA, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 5:22-cv-0270-LCB |
| | ) |
| | ) |
| **FULFYLD, LLC et al.,** | ) |
| | ) |
| **Defendants.** | ) |

# ORDER

Before the Court is Defendant Khanitech, LLC's motion to dismiss Plaintiff MaxRelief USA, Inc.'s amended claims against Khanitech, including negligence (Count IV); unjust enrichment (Count V); conversion, misappropriation, civil theft (Count VI); and conspiracy (Count VII). Docs. 64 & 66. For the reasons explained below, the Court will grant Khanitech's motion to dismiss.

## I.     Background[1]

MaxRelief makes and distributes health-oriented products, such as personal care, cosmetic, and pain relief products. Doc. 64 at 2. MaxRelief's business model depends on third-party warehouse service providers to store MaxRelief's ready-for-sale goods, fulfill incoming orders, and ship the goods to consumers. *Id.* MaxRelief

---

[1] All facts discussed are drawn from MaxRelief's amended complaint. Doc. 64.

and Fulfyld entered a contractual business relationship in 2017. *Id.* at 3. MaxRelief began storing large amounts of its inventory in Fulfyld's warehouse, paying Fulfyld $800.00 per month in warehousing costs. *Id.* at 3–4. Importantly, the warehouse where Fulfyld operated and stored MaxRelief's inventory is owned by Khanitech, a web design and telecommunications company. *Id.* at 1, 3. Defendant Ajesh Khanijow owns both Khanitech and Fulfyld. *Id.* at 3.

In 2021, MaxRelief and Fulfyld's relationship began to break down. *Id.* at 4–5. MaxRelief alleges that Fulfyld, while operating in Khanitech's warehouse, lost some of MaxRelief's inventory, delivered certain MaxRelief goods to the wrong address, and shipped duplicate orders for MaxRelief goods. *Id.* at 4–11. As a result, MaxRelief brought this action against Khanijow, Fulfyld, and Khanitech. Doc. 64.

## II.    Discussion

Khanitech has moved to dismiss MaxRelief's claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 66. To survive a motion to dismiss for failure to state a claim, a plaintiff, must allege sufficient facts to show a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007). "Conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not survive dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation omitted). Similarly, a formulaic recitation of the elements of a cause of action is also inadequate. *Twombly*, 550 U.S.

at 555. The Court is sitting in diversity, so it applies Alabama law to assess MaxRelief's claims for relief. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

### A. Negligence (Count IV)

MaxRelief asserts a negligence claim against Khanitech. Doc. 64 at 13. According to MaxRelief, Khanitech owed MaxRelief a duty of care, Khanitech breached its duty, and because of that MaxRelief suffered damages, including lost profits, incidental damages, and consequential damages. *Id.*

Under Alabama law, the elements of a negligence claim are duty, breach of duty, proximate cause, and damages. *Burton v. MAPCO, Exp., Inc.*, 47 F. Supp. 3d 1279, 1286 (N.D. Ala. 2014) (citing *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009)). Khanitech argues that MaxRelief's negligence claim should be dismissed because it "is based solely on generic allegations that Khanitech owed [MaxRelief] a nonspecific and unexplained duty, which it allegedly breached." (Doc. 66 at 4). Thus, the relevant inquiry is whether MaxRelief alleges sufficient facts to plausibly establish that (1) Khanitech owed MaxRelief a duty and (2) Khanitech breached that duty.

The existence of a duty is a strictly legal question to be determined by the court. *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 837 (Ala. 2003) (internal quotation marks omitted). Whether a duty exists depends on a few factors,

including: "(1) the nature of the defendant's activity, (2) the relationship between the parties, and (3) the type of injury or harm threatened." *Morgan v. South Cent. Bell Tel. Co.*, 466 So. 2d 107, 114 (Ala. 1985). However, the key factor in determining the existence of a duty "is whether the injury was *foreseeable* by the defendant." *Taylor v. Smith*, 892 So. 2d 887, 892 (Ala. 2004) (internal citations omitted).

Here, MaxRelief has not alleged sufficient facts to establish that Khanitech owed it a duty. MaxRelief's complaint hardly mentions Khanitech. The only times MaxRelief mentions Khanitech are when MaxRelief (1) notes that Fulfyld and Khanitech are owned by the same man, Khanijow, and (2) states that Khanitech owns the warehouse, or, rather the land that the warehouse sits on, where Fulfyld operated and stored MaxRelief's goods. Doc. 64 at 1–2, 3; *See* Doc 64-1 at 3 ("Q: And we've been saying that Khanitech owns these warehouses. Let's clarify that a little bit. Does Khanitech own the property that the warehouse sits on?" "A: Yes."). Aside from these two things, MaxRelief fails to explain how Khanitech, a web design company, is in any way connected to MaxRelief's relationship with Fulfyld.

In its response to Khanitech's motion to dismiss, MaxRelief argues that Khanitech owed it a duty under two sources of law—general tort law principles and an Alabama statute. Doc. 70. MaxRelief correctly notes that "the key factor [in determining whether a duty exists] is whether the injury was foreseeable by the

4

defendant." *Id.* at 4. According to MaxRelief, "the risk that inventory stored in a warehouse will be misplaced, lost, or intentionally or accidentally sold is unquestionably foreseeable." *Id.* at 6. This point is well-taken; surely the alleged mishandling or loss of inventory is a foreseeable harm by some defendants. However, the key inquiry requires the harm suffered, be foreseeable by a specific defendant—here, foreseeability must be established as to Khanitech. MaxRelief fails to explain how Fulfyld's alleged loss, misplacement, and sale of MaxRelief's goods was foreseeable by *Khanitech*. Although Fulfyld and Khanitech have common ownership, they are separate entities. While Fulfyld engages in storing goods and fulfilling orders, Khanitech focuses strictly on web design and telecommunications. In this case, MaxRelief alleges no facts to show that Fulfyld's alleged misdeeds were foreseeable by Khanitech. Under traditional tort principles, MaxRelief fails to establish that Khanitech owed it any duty.

MaxRelief also explains that "a duty can be rooted in statute" and cites an Alabama statute that requires warehouses to "exercise with regard to the goods that a reasonably careful person would exercise under similar circumstances." *Id.* at 4–5 (citing Ala. Code § 7-7-204(a)). MaxRelief provides the statutory definition of "warehouse" as "a person engaged in the business of storing goods for hire." *Id.* at 5 (citing Ala. § 7-7-102(a)(13)). Then, MaxRelief argues that its allegations show "Khanitech is a 'warehouse' under Alabama law" so that it owed MaxRelief a

5

statutory duty. *Id.* at 6. However, MaxRelief does not allege any facts that show Khanitech is a warehouse within that definition because MaxRelief alleges only that Khanitech owns the real property and does not allege that Khanitech is actively engaged in storing goods for a business purpose as is Fulfyld. Accordingly, MaxRelief also fails to show that Alabama's statute applies to import a duty on to Khanitech. Because MaxRelief has failed to allege facts to show that Khanitech owed it a duty to support a negligence claim under Alabama law, MaxRelief's negligence claim against Khanitech (Count IV) is due to be dismissed.

### B. Unjust Enrichment (Count V)

MaxRelief also asserts an unjust enrichment claim against Khanitech, alleging that Khanitech "improperly disposed of MaxRelief's goods for [Khanitech's] benefit" so that it was unjustly enriched. Doc. 64 at 13–14. To properly plead a claim of unjust enrichment, MaxRelief must plausibly allege that (1) Khanitech knowingly accepted and retained a benefit, (2) provided by MaxRelief, and (3) MaxRelief had a reasonable expectation of compensation. *Portofino Seaport Village, LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008).

Khanitech argues that MaxRelief has not alleged facts to establish the first element—that Khanitech knowingly accepted and retained a benefit. Doc. 66 at 4. Khanitech argues that MaxRelief has not shown that Khanitech "accepted and retained a benefit" by failing to plead any facts that Khanitech was entrusted with

MaxRelief's goods. *Id.*

In contrast, MaxRelief asserts that it has established the first element and points to its complaint where it alleged that the defendants, including Khanitech, "'knowingly retained a benefit' by keeping, misplacing, losing, or selling without authorization approximately $100,000 worth of its products." Docs. 64 at 10; 70 at 7–8. However, this single allegation does not push the claim across the requisite line from conceivable to plausible. While MaxRelief is correct that "it is not required to 'support' its allegations at this stage," (Doc. 70 at 8), it still must allege facts to show that its unjust enrichment claim is more than pure speculation. *Pruitt v. Charter Commc'ns*, No. 5:17-CV-1764-LCB, 2019 WL 1199837, at *10 (N.D. Ala. Mar. 14, 2019), *aff'd sub nom. Pruitt v. Charter Commc'ns, Inc.*, No. 21-10049, 2022 WL 424875 (11th Cir. Feb. 11, 2022) ("[S]peculation and suspicion are not enough to satisfy the pleading standard . . . ."). As the Supreme Court explained in *Ashcroft v. Iqbal*, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). MaxRelief's allegation that Khanitech kept, misplaced, or impermissibly sold its products is just that type of "fact;" one which is merely consistent with MaxRelief's claim instead of demonstrating how MaxRelief is entitled to relief for unjust enrichment.

MaxRelief's amended complaint mentions Khanitech by name only a handful of times, and otherwise just groups it in with the other defendants. But in the few places Khanitech is named, MaxRelief does not allege any facts that would support a finding that Khanitech ever had control over or access to MaxRelief's products. And while it may be true that Khanitech owns the warehouse, or the parcel of land, where MaxRelief's goods were stored, this is hardly sufficient to show that Khanitech lost, misplaced, or sold MaxRelief's goods. Neither is the fact that Khanijow owns and operates both Fulfyld and Khanitech. Because MaxRelief fails to plead facts to show a plausible unjust enrichment claim, such claim, Count V, against Khanitech is due to be dismissed.

### C. Conversion, Misappropriation, Civil Theft (Count VI)[2]

MaxRelief asserts a conversion claim against Khanitech (Count VI). Doc. 64 at 14. MaxRelief alleges that Khanitech "converted, misappropriated, and/or otherwise stole[] MaxRelief's inventory." *Id.* A conversion claim requires MaxRelief to allege facts that plausibly show one of the following: (1) a wrongful taking by Khanitech, (2) an illegal assertion of ownership by Khanitech, (3) an illegal use or misuse of MaxRelief's property by Khanitech, or (4) a wrongful detention or

---

[2] MaxRelief labels Count VI as "Conversion, Misappropriation, and Civil Theft." Doc. 64. Although there are three different labels used, MaxRelief is simply asserting a conversion claim, as those three terms are generally considered synonymous. Additionally, MaxRelief addresses only those elements in its opposition brief. Doc. 70 at 9–10. Accordingly, the Court only addresses the cause of action using the term conversion.

interference with MaxRelief's property by Khanitech. *Drennen Land & Timber Co. v. Privett*, 643 So. 2d 1347, 1349 (Ala. 1994).

Khanitech states that MaxRelief fails to state a claim for conversion as its basis for the claim relies "on the unexplained allegation that Khanitech somehow converted [MaxRelief]'s property, which was otherwise entrusted to Fulyld." Doc. 66 at 4. MaxRelief argues that its "allegation that Khanitech sold MaxRelief's property without authorization and has retained the proceeds from those sales" constitutes conversion. Doc. 70 at 10.

However, this is the same argument MaxRelief makes to support its unjust enrichment claim. But this argument fails for the same reasons as its conversion claim—MaxRelief's allegations are simply insufficient to state a plausible claim for relief. Accordingly, MaxRelief's conversion claim (Count VI) will be dismissed as to Khanitech.

### D. Conspiracy (Count VII)

Finally, MaxRelief asserts a conspiracy claim against all defendants, including Khanitech. Doc. 64 at 14. Liability for a civil conspiracy exists only if there is an underlying wrong that provides a cause of action. *Ex parte Alabama Dep't of Transp.*, 764 So. 2d 1263, 1271 (Ala. 2000) (internal citations omitted). Where all underlying claims have been dismissed, a claim for civil conspiracy cannot survive. *See Hooper v. Columbus Regional Healthcare System, Inc.*, 956 So. 2d 1135, 1141–

42 (Ala. 2006).

MaxRelief asserts against Khanitech the underlying wrongs of negligence, unjust enrichment, and conversion. Doc. 64. As explained above, all of these claims are due to be dismissed under Rule 12(b)(6) for failure to state a claim. Therefore, there is no underlying wrong committed by Khanitech upon which MaxRelief can allege it engaged in a civil conspiracy and thus no underlying wrong committed by Khanitech to support a civil conspiracy claim. Accordingly, MaxRelief's civil conspiracy claim (Count VII) shall be dismissed as to Khanitech.

### III. Conclusion

For the reasons set forth above, the following claims against Khanitech, Counts IV, V, VI, and VII, are **DISMISSED.** The declaratory judgment claim and all other claims against all other defendants remain active in this action.

**DONE** and **ORDERED** March 26, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE