FILED

2025 Sep-02  PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **MAXRELIEF USA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO: 5:22-cv-00270-LCB** |
| ) | |
| **FULFYLD, LLC, KHANITECH,** ) | |
| **LLC and AJESH KHANIJOW,** ) | |
| ) | |
| **Defendants.** ) | |

---

| | |
|---|---|
| **FULFYLD, LLC,** ) | |
| ) | |
| **Counterclaim Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **MAXRELIEF USA, INC.,** ) | |
| ) | |
| **Counterclaim Defendant.** ) | |

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S
## <u>RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Defendants file this limited sur-reply to address facts included in the Declaration of Peter Spoto ("Spoto Dec.," Doc. 118-1) filed with Plaintiff's reply in support of its renewed motion for summary judgment on its conversion claim. (Doc. 118). While Defendants dispute the accuracy of other facts and arguments contained in Plaintiff's reply, this sur-reply is limited to addressing the facts asserted in Spoto's Declaration. As shown in Defendants' opposition (Doc. 108) and this sur-reply, the alleged "facts" provided by Plaintiff in this case do not show that it is entitled to judgment as a matter of law on its conversion claim.

<u>Disputed Fact</u>

4.    Defendants dispute that Spoto's conversations with Paul Kim "focused primarily on the accuracy of inventory as reported by Fulfyld compared to MaxRelief's own records." (Spoto Dec., Doc. 118-1, at ¶ 4). Spoto provided only two documents to support that his almost daily contact with Mr. Kim was centered on inventory accuracy issues. Evidence produced in this case, including but not limited to, Mr. Kim's affidavit and the emails attached to it (Doc. 108-1), illustrate that communications frequently focused on the logistics of shipment processing, including Spoto's common and regular practice of requesting that labels be preprinted. (Affidavit of Paul Kim, "Kim Aff.," Doc.108-1, at ¶¶ 5, 7, and 10).

1

Moreover, this paragraph highlights that Spoto maintained his own inventory records separate from Fulfyld's—*records to which he discontinued his access after suing Defendants and which he has not produced in this case.*

Disputed Facts

6 and 7.    Defendants dispute the blanket statement that preprinted labels "could never have been used for component items" as Spoto claims. In addition to "component items" consisting of boxes and envelopes that were not sold to customers, some items had component SKUs. (Affidavit of Ajesh Khanijow, "Khanijow Aff.," attached hereto as Exhibit A, at ¶ 6). Preprinted labels could be made for products consisting of component SKUs. *Id.* For example, a two-pack of 1000Hour Brow product advertised on Walmart by MaxRelief contained a SKU in the Fulfyld system for the set (Parent SKU) and for each of the two components making up the set (Child 1 SKU and Child 2 SKU). *Id.* Accordingly, some components were products that were sold to customers for which preprinted labels were requested. *Id.*

Disputed Fact

8.    As shown in Defendants' opposition (Doc. 108) and motion for partial summary judgment (Doc. 93), Defendants dispute that 31,000 items—or any number even close to that—were missing.

<u>Disputed Facts</u>

9 - 11. Defendants dispute that "over 200 boxes of COVID-19 elastic masks" were missing and dispute the implication that Fulfyld sold MaxRelief's masks as its own, which it did not. (Khanijow Aff., at ¶ 7). Moreover, Khanijow recalls asking Spoto if he would like to help sell face masks on consignment that Fulfyld had. *Id*. MaxRelief does not appear to have been charged for or to have paid for the Fulfyld masks it sold on consignment. *Id*. Notably, the allegedly missing masks are referred to on the DSB Report as "AJ Protec Mask." (Deposition of Elaine Nelson, Doc. 95-5, at Ex. 5, Report at p. 5).

<u>Disputed Facts</u>

15. – 16.    Defendants dispute that "[r]oughly 95% of the shipments" MaxRelief requested Fulfyld to process were Amazon FBA shipments. Spoto now provides this number—despite the numerous times Defendants have raised preprinting as causing inventory discrepancies—to claim that most shipments could not possibly have had preprinted labels.  He provides no basis for the self-serving assertions in these paragraphs.

In fact, Fulfyld's records indicate that the opposite appears to be the case— that roughly 5% of MaxRelief's shipments were Amazon FBA, Walmart Fulfillment Services (WFS), or others not from a direct-to-consumer sales channel. (Khanijow Aff., at ¶ 4). Approximately 95% of the shipments Fulfyld processed for MaxRelief

3

were direct to consumer shipments, including ones for Amazon FBM (Fulfilled by Merchant), eBay, and the MaxRelief and related brand websites which use the WooCommerce platform. *Id*. The preprinted labels were requested from multiple sales channels, such as Amazon FBM, eBay, and Walmart DSV, all of which have strict requirements on the date that an order must ship to the customer. *Id*.

Disputed Fact

17.    It is incorrect that Walmart does not have a service similar to Amazon FBA. (Khanijow Aff., at ¶ 8).  It does, called Walmart Fulfillment Service (WFS). *Id*. Spoto had items bulk shipped to WFS by Fulfyld. *Id.*

Disputed Facts

18. – 19.    Defendants dispute these paragraphs to the extent they imply that Spoto only requested preprinting 4 times and for 6 items, which, as shown in depositions of Fulfyld employees and their affidavits, is not the case. While the emails attached to Mr. Kim's affidavits are examples of his preprinting requests, they are not the only times he requested preprinting. *See* Kim Aff., Doc. 108-1, at ¶¶ 5-7 and Khanijow Aff., at ¶ 9.

Additionally, Spoto admits in his declaration that the emails "reflect four times where I requested Fulyld to print the Walmart labels and hold them at his [Mr. Kim's] desk." Notably, he previously testified, **"I'm saying under oath that preprinting labels is not something that [Mr. Kim] did."** (Deposition of Peter

4

Spoto, "Spoto Dep.," Doc. 94-1, at 125:19-20). He also said under oath that one of

the emails he now states is related to preprinting of a Walmart "WM" order was for

an Amazon order going to the UK that had nothing to do with Fulfyld:

> Q.  But my question was -- tell me if I read this correct.  Let's just
> do it that way, since you don't want to answer my question:
> "You will have a restock there on Friday.  Please print the label
> as if you are shipping it, but hold that label at your desk. Then
> send it out Friday." That's what it said; right?
>
> A.  That's correct.
>
> Q.  And so what you're asking him to do is to print a label and then
> to turn around and wait until you get the stock in to send it out;
> correct?
>
> A.  Correct.  Absolutely correct.  Except that's an order going to the
> UK, which has nothing to do with Fulfyld.  That would have
> been a shipping label that I provided, not Fulfyld.
>
> Q.  Well, then why were you asking Mr. Kim to print the label?
>
> A.  Because he prints the labels.  He would ship the stock to the U.K.
> and he was shipping my -- Fulfyld doesn't ship to the UK.  I ship
> to the UK.  So –
>
> ***
>
> A.  No.  So you didn't read it right. You're not talking about a
> shipping label. You're talking about an FBA label, okay, that
> Paul needed to put on the box send to the UK.  Okay.  So
> he printed the FBA label, left it on his desk, had nothing to do
> with Fulfyld. When the stock comes in, Paul puts it on, prints a
> shipping label, sends it to the U.K.

(Spoto Dep., Doc. 94-1, at 131:10-133:2). In addition to his inconsistent and

contradictory testimony, Spoto fails to address in his declaration who the three

orders referenced in the "Lucas 75" email are for (Doc. 118-1), noting the three other emails with "WM" orders are for Walmart orders. Furthermore, as noted above, Defendants dispute that direct-to-consumer shipments accounted for less than 5% of MaxRelief's total shipments as Spoto claims.

Plaintiff's motion for summary judgment on its conversion claim, as shown in the briefing in this case, is due to be denied.

Respectfully submitted September 2, 2025,

/s/Amanda James Turnage
Amanda James Turnage

**OF COUNSEL:**
G. Bartley Loftin, III
Jordan Loftin Wagoner
Loftin Holt Hall & Hargett LLP
200 Clinton Ave. W, Ste 405
Huntsville, AL 35801
Telephone (256) 929-7997
bartley@loftinholt.com
amanda@loftinholt.com
jordan@loftinholt.com

*Attorneys for Defendants Fulfyld, LLC,
Khanitech, LLC and Ajesh Khanijow*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Elena L. Bauer
Benjamin B. Coulter
Denzel E. Okinedo
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
<u>bcoulter@burr.com</u>
<u>dokinedo@burr.com</u>
<u>ebauer@burr.com</u>

*Attorneys for Plaintiff MaxRelief USA, Inc.*

Charles A. Ray, IV, Esq.
200 Westside Square, Ste. 50
P.O. Box 13545
Huntsville, Alabama 35801
<u>cray@charlesraypc.com</u>

*Attorneys for Defendants Fulfyld, LLC,*
*Khanitech, LLC and Ajesh Khanijow*

<u>/s/ Amanda James Turnage</u>
OF COUNSEL

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MAXRELIEF USA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 5:22-cv-00270-LCB** |
| | ) | |
| **FULFYLD, LLC, KHANITECH,** | ) | |
| **LLC and AJESH KHANIJOW,** | ) | |
| | ) | |
| **Defendants.** | ) | |

| | |
|---|---|
| **FULFYLD, LLC,** | ) |
| | ) |
| **Counterclaim Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **MAXRELIEF USA, INC.,** | ) |
| | ) |
| **Counterclaim Defendant.** | ) |

## AFFIDAVIT OF AJESH KHANIJOW

Before me, the undersigned authority, personally appeared Ajesh "AJ" Khanijow, who being known to me and having been duly sworn, does hereby depose and say as follows:

1.    My name is Ajesh Khanijow. I am over the age of 19 years and competent to testify to the matters contained in this affidavit. All matters contained herein are within my personal knowledge.

1

2.    I am the Chief Executive Officer of Fulfyld. As CEO, I am familiar with Fulfyld's processes and procedures, business records, clients, and accounts.

3.    I have reviewed the Declaration of Peter Spoto ("Spoto Dec.," Doc. 118-1) attached to Plaintiff's Reply in Support of Motion for Partial Summary Judgment.

4.    Fulfyld has reviewed its records, including its Warehouse Management System, and disputes that "[r]oughly 95% of the shipments" Peter Spoto ("Peter") requested Fulfyld process for MaxRelief were Amazon FBA shipments as he states in his declaration. (Spoto. Dec. at ¶ 15). In fact, Fulfyld's records indicate that the opposite appears to be the case—that roughly 5% of MaxRelief's shipments were Amazon FBA, Walmart Fulfillment Services (WFS), or others not from a direct-to-consumer sales channel.

5.    Approximately 95% of the shipments Fulfyld processed for MaxRelief were direct to consumer shipments, including ones for Amazon FBM (Fulfilled by Merchant), eBay, and the MaxRelief and related brand websites which use the WooCommerce platform. The preprinted labels were requested from multiple sales channels, including Amazon FBM, eBay, and Walmart DSV, which all have strict requirements on the date that an order must ship to the customer.

6.    In addition to "component items" consisting of boxes and envelopes that were not sold to customers, some items had component SKUs. Preprinted labels

could be made for products consisting of component SKUs. For example, a two-pack of 1000Hour Brow product advertised on Walmart by MaxRelief contained a SKU in the Fulfyld system for the set (Parent SKU) and for each of the two components making up the set (Child 1 SKU and Child 2 SKU). Accordingly, some components were products that were sold to customers for which preprinted labels were requested.

7.    Regarding COVID-19 masks, my recollection is that I asked Peter if he would like to help sell face masks on consignment that Fulfyld had. MaxRelief does not appear to have been charged for or to have paid for the Fulfyld masks it sold on consignment. Fulfyld did not sell MaxRelief's masks as its own.

8.    Walmart does have a service similar to Amazon FBA called Walmart Fulfillment Service (WFS). Peter had items bulk shipped to WFS by Fulfyld.

9.    To the extent Peter's declaration implies that the only times he requested preprinting are referenced in the emails attached to Paul Kim's affidavits, that is not correct. It was a common and regular practice for Peter to request that Fulfyld preprint shipping labels.

Further affiant saith not.

Ajesh Khanijow

Given under my hand and seal on May 29, 2025.

3

**NOTARY PUBLIC**

My Commission Expires: 6-30-27

[NOTARY SEAL]

JENNIFER A. BOTTOMLEY
Notary Public, Alabama State At Large
My Commission Expires June 30, 2027